

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00467-CV

———————————————

MATTHEW STURDIVANT, Appellant

V.

SABRINA JAYA ANDERSON, Appellee

---

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-310658-19

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Matthew Sturdivant brought a negligence claim against Appellee Sabrina Jaya Anderson after his vehicle was rear-ended by her vehicle. Following a two-day trial, a jury found that Anderson's negligence, if any, did not proximately cause the wreck, and the trial court signed a take-nothing judgment on the jury's verdict. In three issues on appeal, Sturdivant argues that the trial court erred by denying his motion for directed verdict, erred by denying his motion for judgment notwithstanding the verdict (JNOV), and abused its discretion by denying his motion for new trial. We will affirm.

## II. BACKGROUND

### A. The Wreck

On the morning of June 29, 2019, Sturdivant was driving a rental car[1] in the right lane of Highway 360 in Tarrant County. Around the same time, Anderson was driving her vehicle in the right lane of Highway 360—behind Sturdivant's vehicle—as she headed to work. It was raining as the two vehicles traveled along the highway, the pavement was wet, and traffic was heavy.[2] The cars in front of Sturdivant and

---

[1]Sturdivant lived in Florida at the time of the wreck but was visiting Texas for a family reunion.

[2]Anderson—who was familiar with the route along Highway 360—testified that there is often heavy traffic in the morning at that location.

Anderson stopped, so Sturdivant applied his brakes.[3]  Sturdivant testified that the vehicles in front of him had "gradually" come to a stop and that he had not "slam[med]" his brakes but that he had stopped "[f]airly quickly," while Anderson testified that the vehicles in front of them had "sudden[ly]" stopped and that Sturdivant had "slammed on his brakes."

According to Sturdivant, as he applied his brakes, he looked in his rearview mirror and could see that Anderson "wasn't prepared to stop" because she "wasn't looking up and controlling the car and paying attention to the driving."  Evidently while still applying his brakes, Sturdivant checked his rearview mirror a second time, saw that Anderson was "100 percent engaged and . . . was ready to stop the vehicle," but he thought that she was not going to be able to stop without hitting his vehicle, so he moved onto the right shoulder of the highway.

Anderson testified that when she saw the vehicles in front of her "slamming" on their brakes, she likewise "slammed" on her brakes.  As she saw Sturdivant's vehicle move onto the right shoulder, she attempted to move into the left lane—which was clear at that moment—to avoid hitting Sturdivant's vehicle.[4]  While she was braking and attempting to move from the right lane into the left lane, the front

---

[3]Anderson testified that the vehicles in front of them had stopped due to "a bigger accident up ahead," while Sturdivant testified that he had not seen the other accident.

[4]According to Anderson, she attempted to move into the left lane because she "had no other option."

3

passenger's side of her vehicle struck the back driver's side of Sturdivant's vehicle. Sturdivant testified that his back was injured as a result of the collision.[5]

At trial, Anderson stated that she accepted fault and responsibility for the wreck. She also said that she did not think that Sturdivant was at fault, nor was he responsible. To the contrary, she stated that the wreck was "100 percent [her] fault." She acknowledged that a reasonable and prudent driver would, taking into account the weather and traffic, have left a safe distance between her vehicle and the vehicles in front of her, although she testified that she did not think that she had left an unsafe distance between her vehicle and Sturdivant's. She stated that she was "being a safe driver" on the day of the wreck, that she was "being a reasonable and . . . prudent driver that day," and that she did not think that she had done anything that was not reasonable and prudent. She also maintained that there was nothing else she could have done to avoid the collision with Sturdivant's vehicle.

Anderson further testified that she had thought there was "enough room" between her vehicle and Sturdivant's vehicle before she had slammed on her brakes and that she had left a proper distance between their vehicles. She acknowledged, however, that she must have been "pretty close" to Sturdivant's vehicle, "considering [she] hit his car." Sturdivant testified that he had not considered that Anderson's vehicle was following too closely until the vehicles in front of him began stopping.

_____

[5]The jury also heard testimony from a chiropractor who had treated Sturdivant following the wreck.

4

Anderson stated that, with the benefit of hindsight, she would have put more distance between her vehicle and Sturdivant's vehicle because if she had left more distance, she could have avoided the wreck.

## B. Procedural Background

In September 2019, Sturdivant filed his lawsuit against Anderson, alleging negligence.[6] Anderson answered Sturdivant's lawsuit, and the case proceeded to trial in August 2022. After both sides had rested and closed, Sturdivant moved for a directed verdict as to Anderson's negligence. Sturdivant noted that Anderson had accepted fault and responsibility for the wreck, and he claimed that the evidence that she was negligent was clear and convincing. Anderson argued that the motion for directed verdict should be denied, contending that an admission of fault or responsibility does not rise to the legal standard of negligence. After hearing arguments from both sides, the trial court denied Sturdivant's motion for directed verdict. Later, during the charge conference, Anderson requested that the trial court give the jury an instruction on sudden emergency. The trial court denied that requested instruction. Sturdivant did not object to the jury charge.

In the charge, the jury was asked whether the negligence, if any, of Anderson proximately caused the wreck, and the jury unanimously answered, "No." The trial court later signed a take-nothing judgment on the jury's verdict. After that judgment

---

[6]Sturdivant also alleged a claim of negligence per se. That claim, however, was not presented to the jury, and Sturdivant does not mention it on appeal.

5

was signed, Sturdivant filed a motion for JNOV and a motion for new trial.[7]

Following a hearing on those motions, the trial court denied them both. This appeal

followed.

### III. DISCUSSION

In three issues, Sturdivant complains about the trial court's denial of his motion

for directed verdict, motion for JNOV, and motion for new trial.

## A. Standards of Review

### 1. Standard of Review for the Denial of a Motion for Directed Verdict

A directed verdict is proper only under limited circumstances: (1) when the

evidence is insufficient to raise a material fact issue or (2) when the evidence

conclusively establishes the movant's right—or conclusively negates the opponent's

right—to judgment. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77

(Tex. 2000); *Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 915–16 (Tex. App.—

Fort Worth 2017, pet. denied). In reviewing a trial court's ruling on a motion for

directed verdict, we follow the standards for assessing legal sufficiency of the

evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *JPMorgan Chase*

---

[7]In his motion for JNOV, Sturdivant argued that the trial court's denial of his motion for directed verdict caused the rendition of an improper judgment. In his motion for new trial, Sturdivant argued that the evidence established as a matter of law that Anderson's negligence proximately caused the wreck and that the jury's answer to the question of Anderson's negligence was against the great weight and preponderance of the evidence.

6

*Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 415 (Tex. App.—Fort Worth 2014, no pet.).

When a party attacks the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Cath. Diocese of El Paso v. Porter*, 622 S.W.3d 824, 834 (Tex. 2021). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If no evidence supports the finding, then we will examine the entire record to determine if the contrary position is established as a matter of law. *Id.* We will sustain the issue only if the contrary position is conclusively established. *Id.* Evidence conclusively establishes a fact when the evidence leaves "no room for ordinary minds to differ as to the conclusion to be drawn from it." *Int'l Bus. Mach. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019). In determining whether the evidence is legally sufficient, we review the evidence in the light most favorable to the person suffering the adverse judgment, and we must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Bos v. Smith*, 556 S.W.3d 293, 200 (Tex. 2018); *City of Keller*, 168 S.W.3d at 822, 827.

## 2. Standard of Review for the Denial of a Motion for JNOV

We likewise review the denial of a motion for JNOV under a legal sufficiency or "no evidence" standard, meaning we credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller*, 168 S.W.3d at 823, 827. "[E]very reasonable inference deducible from the evidence is to be indulged in" support of the jury's finding. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)); *see City of Keller*, 168 S.W.3d at 822. We will uphold the denial of a motion for JNOV if more than a scintilla of competent evidence supports the verdict. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). Evidence exceeds a scintilla when it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner*, 953 S.W.2d at 711.

## 3. Standard of Review for the Denial of a Motion for New Trial

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Hamilton v. Pechacek*, 319 S.W.3d 801, 807 (Tex. App.—Fort Worth 2010, no pet.). To determine whether a trial court has abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the trial court acted in an arbitrary or unreasonable manner. *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)).

**B. Applicable Law**

Here, Sturdivant had the burden to prove that Anderson was negligent and that her negligence proximately caused the wreck. *See Lee v. Carmona*, No. 02-16-00443-CV, 2018 WL 1192240, at *1 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (mem. op.); *Vigil v. Kirkland*, No. 02-16-00147-CV, 2017 WL 2471091, at *2 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op.).

To prove a negligence claim, a plaintiff must establish (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. *Douglas v. Aguilar*, 599 S.W.3d 105, 109 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *20801, Inc. v. Parker*, 249 S.W.3d 392, 398 (Tex. 2008)).

"It is well established that the mere occurrence of a rear-end collision may be some evidence of negligence, but it is not negligence as a matter of law." *Lee*, 2018 WL 1192240, at *2 (citing, among others, *Vigil*, 2017 WL 2471091, at *2). "The plaintiff still must prove specific acts of negligence on the part of the following driver, as well as proximate cause." *Id.* (citing *Vigil*, 2017 WL 2471091, at *2). "Whether the

plaintiff has succeeded in proving negligence by a preponderance of the evidence is within the jury's province to determine." *Id.* (citing *Vigil*, 2017 WL 2471091, at \*2).

## C. Analysis

We begin our analysis by addressing the legal sufficiency of the evidence. Both sides spend much of their briefing on discussing cases they claim support their respective positions on the legal sufficiency of the evidence and distinguishing cases cited by the other side. We first turn to the cases chiefly relied upon by Sturdivant—*Ginn v. Pierce*, 595 S.W.3d 762 (Tex. App.—Houston [14th Dist.] 2019, pet. denied), and *McCormick v. Ramirez*, No. 13-99-00804-CV, 2001 WL 893272 (Tex. App.—Corpus Christi July 12, 2001, pet. denied) (not designated for publication).

In *Ginn*, the defendant's vehicle was stopped in front of the plaintiff's vehicle while an accident ahead of their vehicles was holding up traffic. 595 S.W.3d at 765. Not wanting to wait on the traffic, the defendant put his vehicle in reverse and backed up, striking the plaintiff's vehicle. *Id.* At a later trial on the plaintiff's negligence claim, the defendant admitted that the wreck was his fault but argued that he had not been negligent. *Id.* The defendant claimed that he had looked in the side mirrors and the rearview mirrors but had not seen the plaintiff, contending that the plaintiff's vehicle was "narrow" and was in his blind spot. *Id.* at 767. At the close of the evidence, the plaintiff moved for a directed verdict, which was denied by the trial court. *Id.* at 765. The jury later determined that the defendant's negligence, if any, had not proximately caused the wreck. *Id.*

10

On appeal, the Fourteenth District Court of Appeals reversed, holding that the trial court had erred by denying the plaintiff's motion for directed verdict. *Id.* at 768. The court of appeals determined that the defendant's "blind-spot theory does not square with the undisputed facts." *Id.* at 767. It found that the photographs admitted into evidence showed that the defendant's vehicle was not "narrow" and that "no reasonable factfinder could [have found] that [the defendant] would not have seen [the plaintiff's] vehicle if [the defendant] had used ordinary care in looking in his rear[]view mirror." *Id.* at 767–68.

In *McCormick*, the driver of the plaintiffs' vehicle had braked suddenly to avoid hitting a vehicle that had suddenly cut in front of it. 2001 WL 893272, at *1. The defendant's vehicle, which was traveling close behind the plaintiffs, then struck the rear of the plaintiffs' vehicle. *Id.* The defendant was cited by the police as being at fault for following too closely. *Id.* At the trial on the plaintiffs' negligence claim against the defendant, the trial court denied the defendant's request for an instruction on sudden emergency. *Id.* at *4. The jury later found that the defendant was liable for the car wreck, and it awarded the plaintiffs damages. *Id.* at *1.

On appeal, the defendant argued that the trial court erred by denying her request for an instruction on sudden emergency. *Id.* at *4. In affirming, the Corpus Christi Court of Appeals held that the sudden emergency doctrine does not apply in cases where a defendant has failed to keep a proper lookout or failed to maintain a proper distance between herself and the preceding vehicle, stating that in such cases,

11

the alleged emergency is created by the defendant's conduct that occurred before the emergency arose rather than after. *Id.* at *5. Noting that the defendant's negligence in following too closely to the plaintiffs' vehicle occurred prior to, rather than as a result of, the sudden braking caused by the stopping of the vehicle in front of the plaintiffs, the court of appeals held that the sudden emergency doctrine was inapplicable. *Id.* at *6.

We find these cases to be distinguishable. As to *Ginn*, the court of appeals there determined that the defendant's theory of the case did not square with the undisputed facts, and, therefore, no reasonable factfinder could have found that the defendant would not have seen the plaintiff's vehicle if the defendant had used ordinary care in looking in his rearview mirror. 595 S.W.3d at 767–68. Here, however, we do not find that Anderson's theory—that she had left a safe and proper distance between her vehicle and Sturdivant's—deviates from the undisputed facts. The evidence reflects that it was raining at the time of the wreck, that the pavement was wet, that traffic was heavy, that the cars in front of Sturdivant and Anderson stopped (perhaps suddenly), that Sturdivant was not concerned with Anderson's following too closely until the vehicles in front of them began stopping, that Anderson did not think that she had left an unsafe distance between her vehicle and Sturdivant's and that she did not think that she had done anything that was not reasonable and prudent, that Sturdivant either "slammed" on his brakes or applied them "[f]airly quickly," that Sturdivant moved his vehicle onto the right shoulder, and

12

that Anderson "slammed" on her brakes and attempted to move her vehicle into the clear left lane to avoid the collision.

We find *McCormick* distinguishable because there the jury found the defendant liable for the wreck, and it awarded the plaintiffs damages. 2001 WL 893272, at *1. Here, in contrast, the jury found that Anderson's negligence, if any, did not proximately cause the wreck. Moreover, the issue raised in *McCormick*—whether the trial court erred by denying the defendant's request for an instruction on sudden emergency—is not present here.[8] While *McCormick* may have some factual similarities to the present appeal, we do not find its analysis concerning the defendant's request for an instruction on sudden emergency applicable to the legal sufficiency issues presented here.

We next turn to the cases chiefly relied upon by Anderson—*Lee*, *Vigil*, and *Campbell v. Perez*, No. 02-14-00248-CV, 2015 WL 1020842 (Tex. App.—Fort Worth Mar. 5, 2015, no pet.) (mem. op.).

In *Lee*, the plaintiff's vehicle was stopped behind an SUV whose driver was waiting to turn right into a driveway blocked by a crossing pedestrian. 2018 WL 1192240, at *1. Around that same time, the defendant—who was traveling in the same lane behind the plaintiff—accidently knocked his eyeglasses onto the floorboard

---

[8]While the trial court here denied Anderson's requested instruction on sudden emergency, Anderson was victorious below, and she does not argue on appeal that the trial court erred by denying her requested instruction.

of his vehicle while scratching his eye. *Id.* The defendant then applied his brakes to ensure that he kept a distance between his and the plaintiff's vehicle, and, while keeping his left hand on the steering wheel, he reached down for his glasses while still looking at the road. *Id.* The defendant then saw that he was about to hit the plaintiff's vehicle, and he "didn't have time to react and apply his brakes," causing his vehicle to strike the plaintiff's vehicle, which, in turn, struck the SUV in front of it. *Id.* The defendant's airbag deployed, disorienting him, and instead of applying his brakes, the defendant accidently pressed the gas pedal, causing him to rear-end the plaintiff's vehicle again. *Id.* At the later trial on the plaintiff's negligence claim, the defendant admitted responsibility for the wreck but denied that he had been negligent or that he had failed to use ordinary care. *Id.* at *3. Although he acknowledged that "it would have been more reasonable to pull over and activate his hazard lights, to pull into a driveway, or to 'just suck it up' and keep driving," he stated that he was used to wearing his glasses, so he "instinctively reached for them." *Id.* The jury ultimately found that the defendant's negligence, if any, did not proximately cause the wreck, and the trial court signed a take-nothing judgment on the verdict. *Id.* at *1.

On appeal, the plaintiff argued that the evidence was factually insufficient to support the jury's verdict. *Id.* We disagreed. *Id.* We stated that the defendant had testified that he did not see well without his glasses and that he had instinctively reached for them, and he had also testified that he had applied his brakes "a little bit" to keep a distance between his vehicle and the plaintiff's. *Id.* at *4. We also noted

14

that the defendant had explained that he had struck the plaintiff's vehicle a second time because of his disorientation after the airbag deployed. *Id.* Given the defendant's testimony, we held that the jury's verdict was "not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Id.*

In *Vigil*, the defendant testified that she was traveling with her nine-week-old son who was buckled in a rear-facing infant carrier in the backseat of her vehicle. 2017 WL 2471091, at *1. Her son, who had been crying throughout the car ride, abruptly stopped crying. *Id.* Concerned that her son was choking, the defendant—while still driving—looked at a mirror mounted on the backseat of her vehicle and saw that he had just fallen asleep. *Id.* When she looked back at the road, she saw the plaintiff's vehicle stopped at a red light approximately seven to ten car lengths ahead. *Id.* The defendant applied her brakes but was unable to stop her vehicle before it collided with the plaintiff's vehicle. *Id.* At the later trial on the plaintiff's negligence claim against the defendant, the plaintiff acknowledged that she "could have kept [her] eyes on the road" to prevent the wreck but she denied that she had been negligent. *Id.* The jury ultimately found that the defendant's negligence, if any, did not proximately cause the wreck, and the trial court signed a take-nothing judgment on the verdict. *Id.*

On appeal, the plaintiff argued that the evidence was both legally and factually insufficient to support the jury's verdict. *Id.* We disagreed. *Id.* As to legal sufficiency, we recounted the defendant's testimony and held that "[t]he jury could

15

have determined that no specific act by [the defendant] constituted the failure to use ordinary care, that is, the failure to do, or the doing of, that which a person of ordinary prudence would or would not have done under the same or similar circumstances." *Id.* at *3. We further held that while the defendant's statement that she "could have kept [her] eyes on the road" was some evidence that she was negligent, it did not establish negligence as a matter of law. *Id.* at *4. As to factual sufficiency, we held that the evidence was factually sufficient to support the jury's verdict because "[a]lthough there is evidence in the record that would support a finding that [the defendant] was negligent, evidence also exists that supports the jury's finding that she was not negligent." *Id.*

In *Campbell*, the defendant was traveling behind the plaintiff, with both vehicles in the right lane approaching an intersection with a highway. 2015 WL 1020842, at *1. As the plaintiff approached the intersection, he stopped his vehicle, and the defendant stopped his vehicle behind the plaintiff's vehicle. *Id.* The plaintiff began to move forward, and the defendant looked to the left to check for oncoming traffic, then proceeded, hitting the plaintiff's vehicle, which had stopped again. *Id.* At the later trial on the plaintiff's negligence claim against the defendant, the defendant admitted that the wreck was his fault and that the plaintiff had done nothing to contribute to the wreck. *Id.* at *2. Moreover, the defendant stated that "a reasonable person [would have kept] his car stopped until it was safe to go" and that "a reasonable and prudent person wouldn't move the[] car without looking

16

straightforward ahead." *Id.* at \*3. The defendant also testified, however, that he did not think that he was driving negligently, mentioning that he had looked to the left because traffic was coming from the left and that "a reasonably prudent person [would] be required to look left when at a YIELD sign turning right." *Id.* After the jury found that the defendant's negligence, if any, did not proximately cause the collision, the trial court signed a take-nothing judgment. *Id.* at \*1.

On appeal, the plaintiff argued that the evidence was both legally and factually insufficient to support the jury's verdict. *Id.* We disagreed. *Id.* As to legal sufficiency, we recounted the defendant's testimony regarding the wreck and his statements that he was not driving negligently and had not caused the amount of damage claimed by the plaintiff, and we held that "[t]his testimony provides some evidence that [the defendant] acted with ordinary prudence and, consequently, constitutes legally sufficient evidence to support the jury's finding that [the defendant] was not negligent." *Id.* at \*4. We further held that the defendant's admission of fault was merely a quasi-admission that was not conclusive as to the defendant's negligence. *Id.* at \*3. As to factual sufficiency, we held that although there was some evidence in the record to support a finding that the defendant was negligent, the evidence also supported a finding that he was not negligent, and we determined that the great weight and preponderance of the evidence did not support a reversal of the jury's verdict. *Id.* at \*5.

17

From these authorities, we glean that a driver's admission of fault or responsibility for a wreck does not establish the driver's negligence as a matter of law, even when the driver has acknowledged that there may have been a more reasonable or prudent course of action to have taken than the one the driver ultimately took. Turning back to the present case, and after reviewing the evidence in the light most favorable to the jury's verdict, we cannot say that the evidence is legally insufficient to support the jury's verdict. Here, while there was some evidence that Anderson had acted negligently—namely, her admission of fault and responsibility coupled with her acknowledgement that she could have avoided the wreck if she would have put more distance between her vehicle and Sturdivant's—such evidence does not establish her negligence as a matter of law.

Other evidence exists that supports the jury's finding that Anderson was not negligent—evidence that suggests that Anderson used the degree of care that would have been used by a person of ordinary prudence under the same or similar circumstances. To that end, the evidence reflects that it was raining at the time of the wreck, the pavement was wet, traffic was heavy, the cars in front of Sturdivant and Anderson had stopped, Sturdivant was not concerned with the proximity of Anderson's vehicle to his vehicle until the cars in front of them began stopping, Anderson did not think that she had left an unsafe distance between her vehicle and Sturdivant's, Anderson did not think that she had done anything that was not reasonable and prudent, Sturdivant either "slammed" on his brakes or applied them

18

"[f]airly quickly," Sturdivant moved his vehicle onto the right shoulder, and Anderson "slammed" on her brakes and attempted to move her vehicle into the clear left lane to avoid the collision. Because competent evidence exists that supports the jury's verdict, we overrule Sturdivant's first and second issues. *See City of Keller*, 168 S.W.3d at 822, 827; *Vigil*, 2017 WL 2471091, at *4.

Turning now to Sturdivant's third issue—concerning the trial court's denial of his motion for new trial—we hold that because the evidence is legally[9] sufficient to

---

[9]In his brief, Sturdivant did not argue that the evidence is factually insufficient to support the jury's verdict. Rather, with respect to his first two issues, he argued that the evidence is legally insufficient to support the jury's verdict. With respect to his third issue, he simply argued that the trial court had abused its discretion by denying his motion for new trial by "ignor[ing] the guiding rules or principles of existing cases," namely citing *Ginn* and *McCormick*. His analysis of his third issue ended there because he did not want to "unnecessarily repea[t] consonant arguments." Anderson pointed out in her brief that Sturdivant did not address factual sufficiency in his brief, and, therefore, she argued that he had waived any complaint regarding factual sufficiency. In his reply, Sturdivant maintained that his "factual sufficiency challenge is less that the jury's verdict was against the great weight and preponderance of the evidence—though it is—but more that [Anderson] was negligent as a matter of law (legal sufficiency)." Sturdivant also argued that, in any event, he had preserved his challenge to the factual sufficiency of the evidence, pointing out that his motion for new trial had contended that the jury's verdict was "against the great weight and preponderance of the evidence and is manifestly unjust." However, the question of whether Sturdivant presented a factual sufficiency challenge in a motion for new trial is different from the question of whether he presented it in his appellate brief. *See In re J.R.D.*, No. 11-12-00074-CV, 2014 WL 886811, at *3 (Tex. App.—Eastland Feb. 27, 2014, no pet.) (mem. op.) ("[Appellant] complained in his motion for new trial that the trial court failed to rule on the denied visitation issue. But he did not brief that issue to this court, and points not briefed are waived."); *In re E.D.M.*, No. 14-09-00727-CV, 2010 WL 3418211, at *1 n.1 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, no pet.) (mem. op.) ("Because appellant did not challenge the trial court's ruling on the motion for new trial in his original brief, this particular argument is waived."); *Finney v. Finney*, 164 S.W.2d 263, 266 (Tex. App.—Fort Worth 1942, writ

19

support the jury's finding that Anderson was not negligent, the trial court did not abuse its discretion by denying Sturdivant's motion for new trial. *Cf. Vigil*, 2017 WL 2471091, at *5 (holding that because "the evidence is both legally and factually sufficient to support the jury's finding that [the defendant] was not negligent[,] [t]he trial court . . . did not abuse its discretion by denying [the plaintiff's] motion for new trial"). We thus overrule Sturdivant's third issue.

### IV. CONCLUSION

Having overruled Sturdivant's three issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 27, 2023

---

ref'd w.o.m.) (op. on reh'g) (holding that assignments of error contained in appellant's motion for new trial that were not brought forward in appellant's brief and supported by germane arguments were waived). Because he did not raise a factual sufficiency challenge in his appellant's brief, any complaint regarding the factual sufficiency of the evidence is waived. *See J.R.D.*, 2014 WL 886811, at *3; *E.D.M.*, 2010 WL 3418211, at *1 n.1; *Finney*, 164 S.W.2d at 266.